**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**September 25, 2012**

# In the Court of Appeals of Georgia

A12A1122. THE STATE v. WILSON.

ELLINGTON, Chief Judge.

The State of Georgia indicted Terrell Wilson in Houston County, charging him as follows: (Count 1) aggravated assault of a peace officer, OCGA § 16-5-21 (c); (Count 2) interference with child custody, OCGA § 16-5-45 (b) (1) (A); (Count 3) fleeing or attempting to elude a police officer, OCGA § 40-6-395 (a); and (Count 4) driving with a suspended or revoked license, OCGA § 40-5-121 (a). At trial, Wilson made an oral motion to quash Counts 1 through 3 of the indictment, and the trial court

granted the motion.[1] The State appeals,[2] contending, inter alia, that the court erred in finding that Wilson timely raised his motion to quash and in granting that motion. For the following reasons, we agree and reverse the court's order.

The record shows that the State indicted Wilson in September 2010, and he was arraigned in February 2011. In Count 1 of the indictment, the State charged Wilson with "Aggravated Assault on [a] Peace Officer," alleging that he "did *unlawfully* make an *assault* upon the person of Dep. Richard Slate Simons, a peace officer engaged in the performance of his official duties, *with a motor vehicle, an object*, which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]" (Emphasis supplied.) In Count 2, the State charged Wilson with "interference with custody," alleging that he, "without lawful authority, did entice [S. J.], a child, from [N. J.], who has lawful custody of said child[.]" And, in Count 3, the State charged Wilson with "fleeing or attempting to elude" and alleged that he "did unlawfully and willfully fail to bring his vehicle to a stop after a pursuing police

---

[1] Before the court issued its written ruling on the motion to quash, it granted the State's request to enter a nolle prosequi as to Count 4 of the indictment. See OCGA § 17-8-3.

[2] See OCGA § 5-7-1 (a) (1) (the State may appeal from an order setting aside or dismissing an indictment).

2

officer, Deputy Richard Slate Simons, gave a visual and audible signal, to wit: identifying himself as a police officer, holding up his hand and ordering the defendant to stop his vehicle[.]"

Wilson did not file a demurrer or a motion to quash the indictment before his December 2011 trial. Immediately after the jury was impaneled and sworn, however, Wilson's counsel made an oral motion to quash Counts 1 through 3 of the indictment, asserting that each count failed to allege at least one essential element of the crime charged therein.[3] The State objected to the motion, arguing that it was untimely and was not in writing. The trial court disagreed, however, and quashed Count 1 of the indictment because it failed to allege that Wilson "knowingly" committed an aggravated assault upon a police officer.[4] The court quashed Count 2 because it failed

---

[3] In so moving, one of Wilson's attorneys apologized to the Court for "the timing" of the motion, admitting that, if he had made the motion to quash before the jury was sworn, "it would have given the State the opportunity to [nolle] pros and re-indict [Wilson] to make their indictment stronger[.]" According to Wilson's attorneys, they waited to make the motion because of their duty to Wilson "to bring . . . to a permanent end, the prosecution of [the State's] case by any legal or ethical means." See *Hayward-El v. State*, 284 Ga. App. 125, 127 (2) (643 SE2d 242) (2007) ("[A] defendant is not placed in jeopardy until, in a court of competent jurisdiction with a sufficient indictment, he has been arraigned, has pled, and a jury has been impaneled and sworn.") (citation and punctuation omitted).

[4] Under OCGA § 16-5-21 (c), "[a] person who *knowingly* commits the offense of aggravated assault upon a peace officer while the peace officer is engaged in, or on

3

to allege that Wilson "knowingly" or "recklessly" enticed the named child, S. J., from the legal custodian, N. J.[5] And the court quashed Count 3, ruling that the indictment failed to charge the police officer was in uniform, was wearing an official badge, and was using a marked police vehicle.[6] The court also denied the State's request to pursue

---

account of the performance of, his or her official duties shall, upon conviction thereof, be punished by imprisonment for not less than five nor more than 20 years." (Emphasis supplied.) This statute has been construed to require that, at the time of the assault, the defendant "must have knowledge that he was assaulting a police officer engaged in the performance of his official duties." (Citations omitted.) *Johnson v. State*, 156 Ga. App. 411, 412 (1) (274 SE2d 778) (1980).

[5] Under OCGA § 16-5-45 (b) (1) (A), "[a] person commits the offense of interference with custody when without lawful authority to do so, the person . . . *[k]nowingly or recklessly* takes or entices any child or committed person away from the individual who has lawful custody of such child or committed person[.]" (Emphasis supplied.)

[6] Under OCGA § 40-6-395 (a),

[i]t shall be unlawful for any driver of a vehicle willfully to fail or refuse to bring his or her vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer when given a visual or an audible signal to bring the vehicle to a stop. The signal given by the police officer may be by hand, voice, emergency light, or siren. *The officer giving such signal shall be in uniform prominently displaying his or her badge of office, and his or her vehicle shall be appropriately marked showing it to be an official police vehicle.*

(Emphasis supplied.)

4

convictions for lesser included offenses of the crimes charged in the indictment, ruling that to do so would essentially allow the State to make impermissible material alterations to the indictment.

1. On appeal, the State contends that the trial court erred in finding that Wilson timely filed his motion to quash the indictment, arguing that the alleged defects in the indictment were not fatal to its validity and, therefore, Wilson was required to file a written special demurrer raising the challenge before trial. We review this alleged error de novo.[7]

> Due process of law requires that an indictment put the defendant on notice of the crimes with which he is charged and against which he must defend. An indictment apprises a defendant that he may be convicted of the crime named in the indictment, of a crime included as a matter of law in the crime named, and of a crime established by the facts alleged in the indictment regarding how the crime named was committed.

(Citation and punctuation omitted.) *Stinson v. State*, 279 Ga. 177, 178 (2) (611 SE2d 52) (2005). Stated differently, an indictment not only charges the defendant with the specified crime, it also

---

[7] This Court applies a de novo standard of review to a trial court's determination of whether the allegations in an indictment were legally sufficient. *Doe v. State*, 306 Ga. App. 348, 349 (1) (702 SE2d 669) (2010).

embraces all lesser included offenses of the charged offense. An indictment places an accused on notice that he can be convicted of the crimes expressly charged as well as lesser crimes that are included in the charged offenses as a matter of law or fact. Indeed, if an offense is a lesser included offense as a matter of law or fact, an accused can be convicted of that offense even if the trial court directs a verdict on the offense expressly charged in the indictment.

(Citations omitted.) *Morris v. State*, 310 Ga. App. 126, 129 (2) (712 SE2d 130) (2011). See also OCGA § 16-1-6 ("An accused may be convicted of a crime included in a crime charged in the indictment or accusation.").[8] Thus, if an indictment alleges the facts necessary to establish the elements of a lesser included offense to the charged crime, then a defendant may be convicted of the lesser included offense pursuant to that indictment, as long as the evidence presented at trial is sufficient to sustain the conviction. See *Morris v. State*, 310 Ga. App. at 129-130 (2).[9]

---

[8] See *Gibson v. State*, 265 Ga. App. 325, 327 (593 SE2d 861) (2004) ("Under OCGA § 16-1-6 (2), a crime is included as a matter of law if it 'differs from the crime charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission.' If a crime 'is established by proof of the same or less than all the facts or a less culpable mental state than is required to establish the commission of the crime charged,' it is included as a matter of fact. OCGA § 16-1-6 (1).") (citation omitted).

[9] In *Morris*, the indictment alleged that the defendant "'cause[d] the death of [the victim] . . . by striking [the victim] with his fist . . . contrary to the laws of said

6

If a defendant decides to challenge the validity, specificity or form of an indictment, he or she must file a general and/or special demurrer seeking to quash the indictment. A general demurrer challenges the *validity* of an indictment by asserting that the *substance* of the indictment is legally insufficient to charge any crime.[10] *Stinson v. State*, 279 Ga. at 180 (2), n. 3; *State v. Meeks*, 309 Ga. App. 855, 856 (711 SE2d 403) (2011). In other words, a general demurrer is essentially a claim that the indictment is fatally defective and, therefore, void, because it fails to allege facts that constitute the charged crime or *any other* crime, including a lesser included offense

---

State, the good order, peace and dignity thereof.'" *Morris v. State*, 310 Ga. App. at 130 (2). This Court concluded that this language alleged "'an offensive use of the fists [that] resulted in bodily injury,'" and, as a result, sufficiently alleged the element of "'[i]ntentionally caus[ing] physical harm to another'" that was necessary to prove simple battery under OCGA § 16-5-23 (a) (2). Id. at 129-130 (2).

[10] Because a person cannot be lawfully convicted on an invalid indictment, a general demurrer may be raised orally or in writing at anytime before judgment is entered on his or her conviction. *Stinson v. State*, 279 Ga. at 180 (2), n. 3.

Further, "[i]n line with the fact that a general demurrer attacks the legality of an indictment, it is permissible to raise this ground after verdict by a motion in arrest of judgment[,] even if there was no earlier objection." (Citation and punctuation omitted.) *McDaniel v. State*, 298 Ga. App. 558, 560 (680 SE2d 593) (2009). However, a motion to arrest judgment due to a defective indictment should be granted only "when an indictment is absolutely void in that it fails to charge the accused with any act made a crime by the law[.]" (Citation and punctuation omitted.) *Jones v. State*, 240 Ga. App. 484, 485 (2) (523 SE2d 73) (1999). See *Beals v. State*, 288 Ga. App. 815, 816 (1) (655 SE2d 687) (2007) (accord).

7

of the charged crime. *McDaniel v. State*, 298 Ga. App. 558, 559-560 (680 SE2d 593) (2009); see OCGA § 16-1-6; *Morris v. State*, 310 Ga. App. at 129 (2).

Thus, "[t]he true test of the sufficiency of an indictment to withstand a general demurrer . . . is found in the answer to the question: Can the defendant admit the charge as made and still be innocent [of any crime]? If he can, the indictment is fatally defective." (Citation and punctuation omitted.) *State v. Meeks*, 309 Ga. App. at 856. See *Stinson v. State*, 279 Ga. at 179 (2) (accord). On the other hand, if the defendant cannot admit all of the facts in each count of the indictment and still be innocent of committing any crime, the indictment is legally valid and will survive a general demurrer. *Harris v. State*, 258 Ga. App. 669, 671-672 (1) (574 SE2d 871) (2002) ("[I]f, taking the facts as alleged in the indictment, the guilt of the accused follows as a legal conclusion, the indictment is good.") (citations and punctuation omitted).[11]

In contrast to a general demurrer, a special demurrer merely objects to the *form* of an indictment and seeks more information or greater specificity about the offense

---

[11] See *Stinson v. State*, 279 Ga. at 179 (2) (The one count indictment charged the defendant with committing felony murder by causing the death of the victim while committing the felony of aggravated assault. Therefore, the indictment was sufficient to withstand a general demurrer, because the defendant could not admit that he caused the death of the victim while in the commission of an aggravated assault and still not be guilty of the crime.).

charged. *Stinson v. State*, 279 Ga. at 180 (2), n. 3; *McDaniel v. State*, 298 Ga. App. at 559-560; *Jones v. State*, 240 Ga. App. 484, 486 (2) (523 SE2d 73) (1999). A defendant must file a special demurrer in writing within ten days after arraignment. *Stinson v. State*, 279 Ga. at 180 (2), n. 3; see OCGA § 17-7-110 ("All pretrial motions, including demurrers and special pleas, shall be filed within ten days after the date of arraignment, unless the time for filing is extended by the court."). Once a defendant has timely filed a special demurrer, he or she is entitled to an indictment perfect in form and substance. *State v. Corhen*, 306 Ga. App. 495, 498 (700 SE2d 912) (2010). However, "[t]he failure to file a timely special demurrer seeking additional information constitutes a waiver of the right to be tried on a perfect indictment." (Citations omitted.) *McDaniel v. State*, 298 Ga. App. at 560. See *Stinson v. State*, 279 Ga. at 180 (2) (accord).

(a) With these principles in mind, we turn to the record in the instant case, which shows that, after the jury was impaneled and sworn, Wilson's counsel made an oral motion to quash Counts 1 through 3 of the indictment, asserting that each count failed to allege at least one essential element of the crime charged therein. However, "[a]n allegation that an indictment was deficient because it did not contain all the essential elements of the crime is, in essence, a *special demurrer* seeking greater

9

specificity." (Citation omitted; emphasis supplied.) *McDaniel v. State*, 298 Ga. App. at 560. See *Stinson v. State*, 279 Ga. at 180 (2) (accord).[12] Therefore, because Wilson failed to raise this challenge to the indictment in a timely written special demurrer, it was waived. As a consequence, the trial court erred in setting aside Counts 1 through 3 of the indictment on the basis that it failed to allege every essential element of the crimes charged.[13]

---

[12] In *Stinson*, the Supreme Court of Georgia concluded that the defendant's claim that the felony murder indictment was deficient because it did not contain all of the essential elements of the underlying crime of aggravated assault was, in essence, a special demurrer seeking greater specificity with regard to the predicate felony. *Stinson v. State*, 279 Ga. at 180 (2).

[13] We note that, in each of the cases relied upon by the trial court and Wilson wherein the indictment was found to be void (and, therefore, subject to a general demurrer), a complete reading of each case shows that the reason the indictment was found to be void was *not* because it simply failed to charge an essential element of the crime; instead, it was because, *as a result of that omission*, the indictment failed to charge *any crime at all*. In other words, because of the absence of an essential element of the crime, *the defendant could admit to all of the other allegations of the indictment and still not be guilty of committing any crime*. See, e.g., *Henderson v. Hames*, 287 Ga. 534, 537-540 (3) (697 SE2d 798) (2010) (The indictment attempted to charge the defendant with misuse of a firearm while hunting under OCGA § 16-11-108 (a), but it failed to assert that the defendant misused the firearm "by consciously disregarding a substantial and unjustifiable risk that his act or omission will cause harm to or endanger the safety of another person." Consequently, the indictment charged no crime and was void.); *Ross v. State*, 235 Ga. App. 7, 8-9 (508 SE2d 424) (1998) (The accusation purported to charge the defendant with reckless driving under OCGA § 40-6-390 (a), but it failed to include the required element that he "drove with reckless disregard for the safety of persons or property." Consequently, the indictment charged

10

(b) Further, a challenge to an indictment that is based upon an alleged variance between the *offense named* in the indictment and the *facts alleged* in the indictment goes only to the *form* of the indictment, so that such challenge must be brought by *special demurrer*. *Jones v. State*, 240 Ga. App. at 486 (2) (It is axiomatic that it is not the name given to a crime in the indictment, but the indictment's description of the facts that constituted the crime, that establishes the offense charged.); see *Morris v. State*, 310 Ga. App. at 131 (3) ("It is immaterial what the offense is called in the indictment as long as the averments of the presentment are such as to describe an offense against the laws of the State.") (citations and punctuation omitted); *Hill v. State*, 257 Ga. App. 82, 84 (1) (570 SE2d 395) (2002) ("It is the description of the crime, rather than the description and number of the section under which it appears

---

no crime and was void.); cf. *Borders v. State*, 270 Ga. 804, 806-808 (1) (514 SE2d 14) (1999) (The indictment charged the defendants with committing felony murder and malice murder by causing the death of the victim "'by beating [him] about the body causing him to fall and strike his head and by beating and kicking him about the head and body.'" The Supreme Court ruled that *the indictment was not void, even though it failed to charge the essential elements of the underlying offense, aggravated assault*, because it contained sufficient facts to put the defendants on notice that they were accused of the death of the victim as a result of an aggravated assault.).

Further, to the extent Wilson relies on *State v. Eubanks*, 239 Ga. 483 (238 SE2d 38) (1977), we note that it was a case in which the defendant had challenged the *form* of the indictment by filing a timely *special* demurrer; he did not file a general demurrer challenging the validity of the indictment. Thus, any language in the opinion that refers to the validity of the indictment constitutes mere dicta.

11

in the Code[,] which furnishes the criterion for determining whether the indictment is good.") (citation and punctuation omitted).[14]

Thus, to the extent that Wilson contended that the indictment was void because there was some variance between the facts alleged in each count and the offense actually named in that count, he waived such a challenge by failing to timely file a written special demurrer. *Jones v. State*, 240 Ga. App. at 486 (2).

(c) Having concluded that the trial court was not authorized to quash the indictment based solely upon problems with the *form* of the indictment, we now must address whether the *substance* of the indictment was legally sufficient to withstand Wilson's oral general demurrer. Because, as noted above, an indictment charges the defendant with *any* crime that is established by the facts as alleged, including lesser included crimes, it follows that the trial court was authorized to grant Wilson's general demurrer *only* if the allegations of the indictment were insufficient to charge him with *any* crime, thereby making the indictment fatally deficient and void. See *Stinson v.*

---

[14] See, e.g., *Doe v. State*, 306 Ga. App. at 350 (1) (The indictment informed the defendant that he was accused of attempting "to influence the winning of Georgia Lottery prizes by tampering with lottery materials[,]" and, thus, was sufficient to charge him under subsection (*b*) of OCGA § 50-27-27, even though the indictment referred to the offense of "falsely uttering" a lottery ticket, which is a crime under subsection (*a*) of OCGA § 50-27-27.).

12

*State*, 279 Ga. at 178-180 (2), n. 3; *State v. Meeks*, 309 Ga. App. at 856; *McDaniel v. State*, 298 Ga. App. at 559-560.

(i) Count 1 of the indictment alleged that Wilson " *unlawfully* [made] an *assault* upon the person of Dep. Richard Slate Simons, a peace officer engaged in the performance of his official duties, *with a motor vehicle, an object*, which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]" (Emphasis supplied.)

Under OCGA § 16-5-21 (a) (2), "[a] person commits the offense of aggravated assault when he or she assaults[15] . . . with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]" The only difference between this crime and the offense of aggravated assault on a peace officer, under OCGA § 16-5-21 (c), is "that knowledge of the fact that the victim was a police officer is an essential element of the [latter] crime." (Citation omitted.) *Garrett v. State*, 306 Ga. App. 420, 421-422 (a) (703 SE2d 666) (2010). Thus, in this case, aggravated assault is a lesser included offense of aggravated

---

[15] See OCGA § 16-5-20 (a) ("A person commits the offense of simple assault when he or she either: (1) Attempts to commit a violent injury to the person of another; or (2) Commits an act which places another in reasonable apprehension of immediately receiving a violent injury.").

13

assault on a peace officer as a matter of fact and law. See id. (finding that, because the aggravated assault conviction was "established by proof of the same or less than all the facts" that were required to establish the aggravated assault on a peace officer conviction, the crimes had to be merged for sentencing.).[16]

Consequently, pretermitting whether this count sufficiently charged Wilson with assaulting someone *he knows is a peace officer*, pursuant to OCGA § 16-5-21 (c), he *still* cannot admit to these allegations without being guilty of committing the lesser included offense of aggravated assault under OCGA § 16-5-21 (a) (2). Therefore, we conclude that this count was legally sufficient to withstand a general demurrer.[17]

(ii) In Count 2, the indictment alleged that Wilson, "without lawful authority, did entice [S. J.], a child, from [N. J.], who has lawful custody of said child, contrary

---

[16] See also *Lambert v. State*, 157 Ga. App. 275, 276 (277 SE2d 66) (1981) ("[P]roof that the peace officer was in the performance of official duties has no bearing on the crime [of aggravated assault] other than to lengthen the punishment[.]").

[17] As explained in subsections (a) and (b), supra, if Wilson was uncertain about whether he could be convicted under Count 1 for the lesser included crime of aggravated assault with an offensive object, he should have filed a written special demurrer seeking more information or greater specificity. *Lowe v. State*, 276 Ga. 538, 539 (2) (579 SE2d 728) (2003) ("If [the defendant] wanted greater specificity with regard to the felony that she allegedly committed, her appropriate remedy was a pre-trial special demurrer.") (citations omitted).

14

to the laws of said State[.]" Although the indictment did not allege that Wilson "knowingly or recklessly. . . entice[d]" the child, pursuant to OCGA § 16-5-45 (b) (1) (A), "[t]he failure to allege intent is not fatal where the indictment employs language that necessarily raises an inference that the requisite criminal intent existed." (Citations and punctuation omitted.) *Morris v. State*, 310 Ga. App. at 130 (2) (holding that the allegation that the defendant's "offensive use of [his] fists . . . resulted in bodily injury" was sufficient to charge him with simple battery under OCGA § 16-5-23 (a), which requires that the defendant act "intentionally.").[18] In this case, Count 2 uses the verb "entice," which means "to solicit, persuade, or procure"[19] and, thus, describes an *intentional* act. It follows that Wilson simply cannot admit to acting "without lawful authority" when he enticed the child away from his or her legal custodian, yet still not be guilty of committing a crime. Therefore, we conclude that this count was legally sufficient to withstand a general demurrer.

_____

[18] See also *Lowe v. State*, 276 Ga. at 540 (2) (The indictment alleged that the defendant caused the death of the victim "'by pouring a flammable liquid over [him] and igniting same ....' Implicit in the allegation that she intentionally set fire to the victim is a charge that 'she maliciously caused bodily harm to another by depriving him ... of a member of his ... body, by rendering a member of his ... body useless, or by seriously disfiguring his ... body or a member thereof[,]' under OCGA § 16-5-24 (a).") (citation omitted).

[19] Black's Law Dictionary, www.thelawdictionary.org (2nd ed.).

15

(iii) Finally, in Count 3, the indictment charged Wilson with "fleeing or attempting to elude," alleging that Wilson "unlawfully and willfully fail[ed] to bring his vehicle to a stop after a pursuing police officer, Deputy Richard Slate Simons, gave a visual and audible signal, to wit: identifying himself as a police officer, holding up his hand and ordering the defendant to stop his vehicle[.]" Pretermitting whether the allegation that Deputy Simons "identif[ied] himself as a police officer" was sufficient to allege that he was in uniform, wearing an official badge, and using a marked police vehicle, as required by OCGA § 40-6-395 (a),[20] we conclude that the count was still legally sufficient to withstand a general demurrer.

Under 16-10-24 (a), "a person who knowingly and willfully obstructs or hinders any law enforcement officer in the lawful discharge of his official duties is guilty of a misdemeanor." We find, therefore, that the facts alleged in Count 3 were sufficient to charge Wilson with the lesser included offense of obstruction of a police officer. *Gibson v. State*, 265 Ga. App. 325, 328 (593 SE2d 861) (2004) (finding that an indictment that charged the defendant with fleeing or attempting to elude an officer under OCGA § 40-6-395 (a) alleged facts that were sufficient to also charge the

---

[20] We note that Wilson has admitted in his appellate brief that Count 3 provided sufficient notice of the charge against him.

16

defendant with the lesser included offense of obstruction of an officer under OCGA § 16-10-24 (a)).[21] In addition, Wilson is unable to admit to the allegations in this count without being guilty of committing a crime.

In sum, because we conclude that each of the counts was sufficient to charge Wilson with a crime and, as a result, was legally sufficient to survive a general demurrer, it follows that the trial court erred in quashing those counts of the indictment.[22]

2. Because we conclude that the trial court erred in quashing the indictment, the State's remaining alleged errors are moot.

3. Finally, although it was neither illegal nor unethical for defense counsel to intentionally wait until the jury was impaneled and sworn before moving to quash the

---

[21] Even though the indictment in *Gibson* did not specifically allege that the defendant acted "knowingly," pursuant to the obstruction statute, we found "no material distinction between 'willfully' disobeying [a police officer's] order and disobeying it '*knowingly* and willfully,'" at least under the facts of the case. (Emphasis in original.) *Gibson v. State*, 265 Ga. App. at 328. This Court also noted that "flight from police apprehension is sufficient opposition to support an obstruction charge." (Citations omitted.) Id. at 328-329.

[22] We emphasize that, because Wilson failed to challenge the form or specificity of the indictment by special demurrer, he is not entitled to an indictment that is perfect in form. Thus, the State is authorized to prosecute Wilson for the crimes that are named in the indictment, as well as the lesser included offenses of those crimes.

17

indictment, an act that was done with the express hope that jeopardy would attach and that the State would be unable to re-indict his client, we find that it is disrespectful to the trial court, the State, the jurors, and the witnesses and is wasteful of the time and extremely limited resources of the State's justice system. See *Armstrong v. State*, 281 Ga. App. 297, 298, n. 1 (635 SE2d 880) (2006) (Defense counsel intentionally waited until the jury had been sworn before moving to dismiss the charges on the grounds that his client had not waived his right to indictment by a grand jury in writing, acknowledging that he waited because he hoped to prevent the State from indicting his client. This Court noted that it agreed with the trial court "that this attempted legal maneuver was wasteful of the time and resources of court, counsel, and jurors, and should be deplored."). Not only was counsel's tactic doomed as futile, because the grant of a general demurrer due to a finding that the indictment was void ab initio or that the court lacked jurisdiction does not automatically bar the re-indictment of the defendant,[23] but, by gambling on the success of a general demurrer in this case by

---

[23] See *Armstrong v. State*, 281 Ga. App. at 298 ("A defendant is not placed in jeopardy until, in a court of competent jurisdiction *with a sufficient indictment*, he has been arraigned, has pled, and a jury has been impaneled and sworn.") (citation and punctuation omitted; emphasis supplied); see also OCGA § 16-1-8 (d) ("A prosecution is not barred within the meaning of this Code section if: (1) The former prosecution was before a court which lacked jurisdiction over the accused or the crime[.]").

18

intentionally waiting until issue had been joined before challenging the indictment, counsel waived his client's right to challenge the indictment via a special demurrer.

On the other hand, it is well within the power of the State and its prosecutors to avoid obvious oversights in indictments, such as those that are at issue in this case. Although most indictments are drafted so that they are clearly sufficient to withstand either a general or special demurrer, mistakes such as those presented here occur with inexplicable frequency and result in a tremendous waste of judicial and law enforcement resources that could and should be directed elsewhere. Although the minimal legal requirements for the form of indictments are provided, in very general terms, in OCGA § 17-7-54 (a),[24] we strongly encourage the State to make every reasonable effort to avoid the problems at issue here by ensuring that each count of

---

[24] See OCGA § 17-7-54 (a) ("Every indictment of the grand jury which states the offense in the terms and language of this Code or so plainly that the nature of the offense charged may easily be understood by the jury shall be deemed sufficiently technical and correct. The form of every indictment shall be substantially as follows: Georgia, _____ County. The grand jurors selected, chosen, and sworn for the County of _____, to wit: _____, in the name and behalf of the citizens of Georgia, charge and accuse (name of the accused) of the county and state aforesaid with the offense of _____; for that the said (name of the accused) (state with sufficient certainty the offense and the time and place of committing the same), contrary to the laws of said state, the good order, peace, and dignity thereof.").

19

every indictment meets some or, preferably, all of the following criteria[25]: includes all of the essential elements of the crime sought to be charged, especially the applicable mens rea[26]; cites to a specific criminal statute and, when appropriate, the relevant subsection[27]; tracks the language of a specific criminal statute[28]; avoids surplus

---

[25] To be clear, we are not suggesting that an indictment that does not meet any of these criteria is per se void or voidable. We simply make these suggestions with the intention of assisting the defendant by providing more specific notice of the crimes charged, while assisting the State in proactively preventing otherwise meritless challenges to indictments.

[26] See, e.g., *Henderson v. Hames*, 287 Ga. 534, 538-539 (3) (697 SE2d 798) (2010) (the indictment failed to charge any crime because it omitted one of the two essential components of mens rea that were necessary to constitute a crime).

[27] See *State v. Shabazz*, 291 Ga. App. 751, 752 (3) (662 SE2d 828) (2008) ("[W]here an accusation charges the accused with having committed certain acts 'in violation of' a specified penal statute[,] the accusation incorporates the terms of the referenced Code section. Because an accused cannot admit an allegation that [his or] her acts were 'in violation of' a specified Code section and yet not be guilty of the offense set out in that Code section, such an accusation is not fatally defective" and will withstand a general demurrer, despite the omission of an essential element of the charged offense.) (citations omitted); see also *Dixson v. State*, 313 Ga. App. 379, 383 (2) (721 SE2d 555) (2011) (accord).

[28] See OCGA § 17-7-54 (a); *Falagian v. State*, 300 Ga. App. 187, 192 (3) (684 SE2d 340) (2009) ("An indictment which charges the offense in the language of the defining statute and describes the acts constituting the offense sufficiently to put the defendant on notice of the offense with which he is charged survives a general demurrer.") (citations and punctuation omitted).

language[29]; and accurately provides names, dates, and other facts, especially when they are material to the charged crime.[30]

*Judgment reversed. Phipps, P. J., and Dillard, J., concur.*

---

[29] See *Corhen v. State*, 306 Ga. App. at 498-499 (2) ("An allegation in an indictment that is wholly unnecessary to constitute the offenses charged is mere surplusage. Mere surplusage will not vitiate an indictment, and need not be established in proof. The material facts which constitute the offense charged must be stated and they must be proved in evidence. But allegations not essential to such purpose, which might be entirely omitted without affecting the charge and without detriment to the indictment, are considered as mere surplusage, and may be disregarded in evidence.") (citations and punctuation omitted).

[30] See, e.g., id. at 501 (4) (noting that each count of the indictment "sufficiently apprises each of the named defendants of what he or she must be prepared to defend against by identifying the specific statute and subsection under which he or she was charged, giving the date(s) on which each crime was committed, describing the manner in which the crime was committed, providing the address of each residential property at issue, identifying the victim(s) of each crime, and, when applicable, providing the exact monetary figure(s) for the fraudulent misrepresentations or omissions or the value of the stolen property") (citations omitted).