**FIRST DIVISION
BARNES, P. J.,
MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**March 14, 2019**

# In the Court of Appeals of Georgia

A18A1852. FRAZIER v. THE STATE.

MCMILLIAN, Judge.

Rolando Dupree Frazier was convicted on one count of conspiracy to commit aggravated assault on a police officer but acquitted on four other counts.[1] Frazier appeals the trial court's denials of his motion for directed verdict on the conspiracy charge and his motion for new trial. Because we find that the evidence did not support Frazier's conviction for conspiracy to commit an aggravated assault on a police officer, we reverse.[2]

---

[1] The jury acquitted Frazier on one count each of aggravated assault on a peace officer, obstruction of an officer, interference with government property, and possession of a firearm during the commission of a felony.

[2] In the second phase of Frazier's bifurcated trial, he was convicted of possession of a firearm by a convicted felon, but that charge is not at issue in this appeal. Prior to trial, the State moved to enter a nolle prosequi on four additional

Frazier was indicted, along with six other individuals,[3] in connection with an incident in which multiple gunshots were fired at, and at least two struck, an Albany Police Department vehicle driven by an officer with the department. Viewed in the light most favorable to the verdict,[4] the evidence at trial showed that in the early morning hours of August 23, 2011, the officer responded to a call reporting shots fired at an address in Dougherty County. When the officer arrived on the scene, he saw approximately eight to ten males on the street, and after he shone his spotlight on them, they fled. A short time later, while the officer was still on the scene, someone shot at his police car multiple times, with what he said sounded like an automatic weapon, striking the body of the car and shooting out the car's rear window.

At trial, the State elicited testimony from five of Frazier's co-indictees: David Stephens, Cortavis Davis, Roger Farmer, Steve Washington, and Michael Stephens.

_____

counts charging violations of the Georgia Street Gang Terrorism and Prevention Act, OCGA § 16-15-1 et seq., and the trial court granted the motion.

[3] Prior to trial, the State nolle prossed the charges against five of the co-indictees, David Stephens, Roger Farmer, Sean Frazier, Michael Stephens, and Cortavis Davis. The remaining co-indictee, Steve Washington, entered a guilty plea to some of the charges, and the remaining charges against him were nolle prossed.

[4] *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

When David Stephens was called to the stand, he exercised his constitutional right to remain silent. The trial court then allowed the prosecutor to read his sworn testimony from an earlier court hearing to the jury. At that hearing, David Stephens testified that on the night in question, after leaving a club together, Frazier, Sean Frazier, Michael Stephens, and he were having an argument about his girlfriend when Davis fired a couple of shots into the air to break up the fight. Frazier walked away, and when David Stephens later saw him, he was holding an assault rifle. David Stephens then left the area because he was afraid he would be shot, but as he was running down an alley, he saw a police car and, about two minutes later, he heard multiple gunshots.

Davis similarly testified at trial that Frazier and David Stephens got into a fight and admitted that he tried to break up the fight by firing a handgun in the air. He testified that once the police arrived on the scene, Frazier told everyone to run and they all did. He said he did not remember his prior court testimony or his prior statements to police. Although he initially testified that he did not see Frazier with a gun that night, he eventually admitted on re-direct that he, in fact, saw Frazier with an AK-47, although he said he did not see him shoot it. However, he said that right after he began running, he heard gunshots. Davis also admitted that he had previously

3

testified that Frazier went into a dark spot, knelt down, and shot 11 to 12 rounds of bullets. An Albany police detective later testified that shortly after the shooting, Davis told him that Frazier had an assault rifle and said that he was about to shoot at the officer, telling the others to run. Davis told the officer that after he ran, he heard gunshots.

Farmer, Washington, and Michael Stephens also testified regarding the verbal altercation over David Stephens' girlfriend and Davis' shooting a handgun in the air to break up the fight. They each also testified that they saw Frazier with an AK-47 that night, but did not see him shoot the gun because they ran. However, Farmer admitted that he had previously testified that he saw Frazier low to the ground and aiming the gun. And at trial, Washington testified that he knows Frazier fired the shots because he had the gun. Farmer, Washington, and Michael Stephens testified that Frazier announced that he was going to shoot the police, and Farmer and Michael Stephens said that everyone told Frazier not to shoot at the police car. Washington and Michael Stephens testified that they heard gunshots as they were running away. Michael Stephens also stated that he originally told police that Farmer had the AK-47 first.

Frazier's trial attorney called co-indictee Sean Frazier as a witness for the defense, but he invoked his constitutional right not to testify. Frazier did not take the stand in his own behalf, but during the State's case, the prosecution presented evidence through two Albany police officers that when questioned by police about the incident, Frazier told them about the altercation and Davis' shooting a gun in the air, but he said that Farmer had the rifle and Sean Frazier took it away from Farmer and shot the police car.

Frazier argues on appeal that the trial court erred in (1) denying his motion for directed verdict as to the charge of conspiracy; (2) denying his request not to submit the conspiracy charge to the jury after the State expressly abandoned the count in its closing argument; and (3) denying his motion for new trial.

(1) We turn first to Frazier's contention that the trial court erred in sending the charge of conspiracy to the jury because the State failed to present evidence to support a conspiracy. In reviewing the sufficiency of the evidence on a criminal conviction, "we must view the evidence in the light most favorable to the verdict, and we inquire only whether any rational trier of fact might find beyond a reasonable doubt from that evidence that the defendant is guilty of the crimes of which he was

convicted" (Citation and punctuation omitted.) *Walker v. State*, 296 Ga. 161, 163 (1) (766 SE2d 28) (2014).

Count 1 of the indictment charged that Frazier

did . . . conspire with [his other co-indictees] to commit the crime of aggravated assault on a peace officer, and in furtherance of such conspiracy [they] did the following overt acts, to wit:

A)   Roger Farmer retrieved a rifle from the trunk of his vehicle;

B)   Roger Farmer did give said rifle to Rolando Frazier;

C)   Rolando Frazier instructed [his co-indictees] to run when he shot at Ptl. Dillard Glover's vehicle;

D)   Rolando Frazier did shoot Ptl. Dillard Glover's vehicle . . . .

It is well settled that the State was required to establish all the material allegations in Count 1 to prove that Frazier was guilty of conspiracy. *Griffin v State*, 294 Ga. 325, 328 (751 SE2d 773) (2013).

"The crime of conspiracy . . . can only be defined in conjunction with a second criminal Code section, i.e., the substantive crime involved in the conspiracy[,]" which

6

in this case is aggravated assault on a peace officer under OCGA § 16-5-21 (c). *Orkin v. State*, 236 Ga. 176, 178 (1) (223 SE2d 61) (1976). "A person commits the offense of conspiracy to commit a crime when he together with one or more persons conspires to commit any crime and any one or more of such persons does any overt act to effect the object of the conspiracy." OCGA § 16-4-8. As pertinent to this case, "[a] person commits the offense of aggravated assault when he or she assaults[5] . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury[.]" OCGA § 16-5-21 (a) (2). "The only difference between this crime and the offense of aggravated assault on a peace officer, under OCGA § 16-5-21 (c), is that knowledge of the fact that the victim was a police officer is an essential element of the latter crime." (Citation and punctuation omitted.) *State v. Wilson*, 318 Ga. App. 88, 95 (1)

---

[5] OCGA § 16-5-20 (a) provides that "[a] person commits the offense of simple assault when he or she either:

(1) Attempts to commit a violent injury to the person of another; or

(2) Commits an act which places another in reasonable apprehension of immediately receiving a violent injury.

7

(732 SE2d 330) (2012). See also *Bundren v. State*, 247 Ga. 180, 181 (2) (274 SE2d 455) (1981).

Therefore, in order to establish the conspiracy as charged in this case, the State was required to prove both an agreement between Frazier and someone else to commit an aggravated assault against the officer and at least one overt act in furtherance of that agreement. See *Thornton v. State*, 331 Ga. App. 191, 194 (1) (770 SE2d 279) (2015). Our Supreme Court has held that "[s]uch agreement need not be express, nor does it require a 'meeting of the minds' to the same degree necessary to form a contract; all that is required is a tacit mutual understanding between persons to pursue a common criminal objective." (Citations and punctuation omitted.) *Griffin*, 294 Ga. at 327. "[T]his tacit understanding may be proved by circumstantial evidence, inferred from the nature of the acts done, the relation of the parties, the interest of the alleged conspirators, and other circumstances." (Citation omitted.) *Thornton*, 331 Ga. App. at 197 (2).

Here, there was a plethora of evidence from which the jury could have found that Frazier shot at the officer's car, but the jury acquitted Frazier of the charges relating to that action and instead found that he had formed a conspiracy to shoot at the officer. Having reviewed the record, however, we find that the State failed to

8

show an agreement between Frazier and any of his co-indictees, tacit or otherwise, to commit aggravated assault on the officer, because there is no evidence showing a mutual understanding between Frazier and anyone else to pursue the common criminal objective of shooting the officer.

Viewing the evidence in the light most favorable to the verdict, the following facts were established at trial: (1) the individuals were together that night after leaving a club; (2) an altercation broke out over David Stephens' girlfriend and Davis shot a gun in the air to break it up; (3) Farmer had the AK-47 before Frazier; (4) when the officer appeared on the scene to investigate the report of shots being fired, Frazier said that he was going to shoot him; (5) the others told Frazier not to shoot him, or ran away, or both; and (6) Frazier shot at the officer. Although Frazier and Michael Stephens originally told police that Roger Farmer had the gun first, there was no evidence that Farmer took it out of his car trunk and handed it to Frazier, as alleged in the indictment, nor was there any other evidence presented about how Frazier obtained the weapon from Farmer. And even though Frazier told the others to run after he announced that he was going to shoot the officer, and they did, we find this evidence insufficient to establish a conspiracy to commit aggravated assault on the officer. Running from the area where Frazier intended to shoot, at his direction or

9

otherwise, may reflect an understanding that the crime was about to happen, but that is not sufficient, in and of itself, to establish beyond a reasonable doubt any tacit mutual agreement among the co-indictees to commit the crime.[6] See *Jackson*, 443 U.S. at 319 (III) (B); *Griffin*, 294 Ga. at 328-29 (reversing conspiracy conviction where no evidence of mutual agreement to commit the crime).

Accordingly, we reverse Frazier's conviction for conspiracy to shoot a peace officer.

2. Given our holding in Division 1 above, we need not reach Frazier's remaining enumerations of error.

*Judgment reversed. Barnes, P. J., and Reese, J., concur.*

---

[6] Although not dispositive, we note that the prosecutor shared this view of the evidence, arguing in closing:

> And now I want to get to the charges. Count 1, conspiracy to commit aggravated assault on a peace officer. I'll give the defense that. The way the testimony went, the truth that came out, there wasn't a conspiracy. The defendant acted alone.