**SECOND DIVISION
MILLER, P. J.,
MERCIER, J., and SENIOR APPELLATE JUDGE PHIPPS**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**February 25, 2021**

# In the Court of Appeals of Georgia

A20A1761. BELL v. THE STATE.

MILLER, Presiding Judge.

A Rockdale County jury found Letron Bell guilty of two counts of voluntary manslaughter, one count of aggravated assault, one count of aggravated assault on a public safety officer, and two counts of possession of a firearm during the commission of a crime, and the trial court sentenced Bell to 50 years' imprisonment. Bell appeals from the denial of his motion for new trial, arguing that (1) his trial counsel rendered ineffective assistance of counsel by failing to impeach a witness; (2) the indictment failed to properly allege that he knowingly assaulted a public safety officer; and (3) the trial court committed plain error in instructing the jury on voluntary manslaughter. For the reasons that follow, we affirm.

Viewed in the light most favorable to the verdicts,[1] the record shows that Letron Bell and Lisa Bell were married and that Lisa had four children, two of whom she shared with Bell. On the morning of January 21, 2018, Lisa sent her mother a text message telling her that Bell had choked her on the previous night and that she was going to stay with a friend. Her mother responded to the text message and told Lisa that she had called the police and that they were on their way.[2]

Joey McClendon from the Rockdale County Sheriff's Office arrived at the Bells' home and parked her vehicle in front of the house. Deputy Robert Burt from the Rockdale County Sheriff's Office also arrived on scene at the house. After Deputy McClendon rang the doorbell of the residence, Lisa opened the door and told Deputy McClendon that she wanted to leave with her children and that Bell had choked her. Bell, who had been sitting on a nearby staircase inside the home, told the officer, "that is bullshit," and closed the door while holding a gun in his hand.

Lisa later exited the house and ran past Deputy Burt with Bell "charg[ing]" behind her. Bell then fired a gunshot in the deputies' direction, and he continued to

---

[1] *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[2] The 911 calls were admitted into evidence and played for the jury.

2

exchange gunfire with Deputy Burt as he fled the area.[3] A nearby neighbor heard "popping noises," and after stepping outside of her home, she saw Bell chasing Lisa down a hill. After Lisa reached a shed, the neighbor heard a "pop," and she saw Lisa fall to the ground. Another neighbor in the area also heard the sound of gunshots and saw Bell chasing Lisa, and he flagged down another officer who was in the area. Bell was arrested on the scene, and Lisa later died due to her injuries from a gunshot wound.

Bell was indicted on one count of malice murder (OCGA § 16-5-1), one count of felony murder (OCGA § 16-5-1), one count of aggravated assault (OCGA § 16-5-21), two counts of aggravated assault on a public safety officer (OCGA § 16-5-21 (c) (1)), and three counts of possession of a firearm during the commission of a crime (OCGA § 16-11-106). The jury convicted Bell of two counts of voluntary manslaughter as the lesser included offenses of malice murder and felony murder, one count of aggravated assault, one count of aggravated assault on a public safety officer, and two counts of possession of a firearm during the commission of a crime,[4]

_____

[3] The dash-cam video from McClendon's vehicle captured the incident and was admitted into evidence and played for the jury.

[4] The jury acquitted Bell of one count of aggravated assault on a public safety officer and the related count of possession of a firearm during the commission of a

3

and the trial court sentenced Bell to 50 years' imprisonment.[5] Bell filed a motion for new trial, which the trial court denied after a hearing. This appeal followed.

1. First, Bell argues that his trial counsel rendered ineffective assistance of counsel by failing to impeach Deputy Burt with a prior statement in which he said that Bell did not aim the firearm at him during the shooting. We disagree and conclude that Bell has failed to show that his trial counsel rendered ineffective assistance in this regard.

> To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. If an appellant fails to meet his or her burden of proving either prong of the *Strickland*[6] test, the reviewing court does not have to examine the other prong. In reviewing the trial court's decision, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts. Furthermore, there

crime.

[5] The trial court merged Bell's voluntary manslaughter convictions and also merged his aggravated assault conviction for sentencing purposes.

[6] *Strickland v. Washington*, 466 U. S. 668 (104 SCt 2052, 80 LEd2d 674) (1984).

4

is a strong presumption that the performance of counsel was within the wide range of reasonable professional lawyering, and we cannot reach a contrary conclusion unless defendant successfully rebuts the presumption by clear and convincing evidence. Judicial scrutiny of counsel's performance must be highly deferential.

(Citation omitted). *Gay v. State*, 351 Ga. App. 811, 817 (2) (833 SE2d 305) (2019).

Here, Count Four of the indictment charged Bell with aggravated assault on a public safety officer for discharging his firearm "in the direction of and in the presence of . . . Robert Burt[.]" During trial, Deputy Burt testified that after Bell exited the house to run after Lisa, Bell fired a gunshot in his direction and that he and Bell began to exchange gunfire. In a video recording which captured the moments immediately following the shooting, Deputy Burt said that he did not think Bell was aiming his gun at him. At the hearing for Bell's motion for new trial, Bell's trial counsel testified that she was aware of Deputy Burt's statements on the recording and that she wanted to impeach Deputy Burt with his recorded statements, but she misplaced the video.

We conclude that, assuming that trial counsel was deficient for failing to impeach Deputy Burt with his statements on the video recording, Bell cannot demonstrate prejudice from trial counsel's alleged deficiency. Deputy McClendon

5

testified that she observed Bell and Deputy Burt exchange gunfire as Bell ran through the yard, which at the very least shows that Bell discharged his firearm in Deputy Burt's presence as alleged in the indictment. Additionally, the dash-cam video from Deputy McClendon's vehicle that captured the incident was admitted into evidence and played for the jury. In light of this evidence, Bell cannot show a reasonable likelihood that, but for trial counsel's error, the outcome at trial would have been different. See *Taylor v. State*, 282 Ga. 693, 696-697 (2) (c) (653 SE2d 477) (2007) (defendant could not show prejudice from trial counsel's failure to impeach a witness with a prior inconsistent statement where there was no reasonable probability that the difference between the statements would have affected the outcome at trial). Accordingly, Bell's ineffective assistance of counsel claim fails.

2. Next, Bell argues that the indictment was insufficient because it did not allege the necessary elements for the aggravated assault on a public safety officer offense. We disagree and conclude that the indictment was not insufficient.

The sufficiency of an indictment is a question of law that we review de novo. *Strickland v. State*, 349 Ga. App. 673, 675 (2) (824 SE2d 555) (2019).

> A general demurrer challenges the validity of an indictment by asserting
> that the substance of the indictment is legally insufficient to charge any

6

crime. In other words, a general demurrer is essentially a claim that the indictment is fatally defective and, therefore, void, because it fails to allege facts that constitute the charged crime or any other crime, including a lesser included offense of the charged crime. Thus, the true test of the sufficiency of an indictment to withstand a general demurrer is found in the answer to the question: Can the defendant admit the charge as made and still be innocent of any crime? If he can, the indictment is fatally defective. On the other hand, if the defendant cannot admit all of the facts in each count of the indictment and still be innocent of committing any crime, the indictment is legally valid and will survive a general demurrer.

(Citations, punctuation, and emphasis omitted.) *State v. Wilson*, 318 Ga. App. 88, 91-92 (1) (732 SE2d 330) (2012).

Under OCGA § 16-5-21, "a person commits the offense of aggravated assault when he or she assaults with a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." (Citation omitted.) *Jackson v. State*, 347 Ga. App. 199, 202 (1) (b) (818 SE2d 268) (2018). Here, the State alleged that Bell violated OCGA § 16-5-21 (c) (1), which provides "that an aggravated assault on a public safety officer occurs when a person knowingly commits the offense of aggravated assault upon a public safety officer while he or she is engaged in, or on account of the

7

performance, his or her official duties." (Citation and punctuation omitted.) Id. Therefore, aggravated assault is a lesser included offense of aggravated assault on a public safety officer. *Wilson*, supra, 318 Ga. App. at 95 (1) (c) (i). Additionally, "[t]his statute has been construed to require that, at the time of the assault, the defendant must have knowledge that he was assaulting a police officer engaged in the performance of his official duties." (Citation and punctuation omitted.) Id. at 89 n.4. Count 4 of the indictment alleged that Bell

> did unlawfully then and there knowingly assault the person of Robert Burt, a public safety officer, with a deadly weapon, a handgun, by committing an act which placed said Robert Burt in reasonable apprehension of immediately receiving a violent injury, to-wit: by discharging said firearm in the direction of and in the presence of said Robert Burt, while said officer was engaged in the performance of his official duties[.]

(Emphasis supplied.)

Pretermitting whether the indictment sufficiently charged Bell with assaulting someone he knew was a public safety officer under OCGA § 16-5-21 (c) (1), Bell cannot admit to the allegations contained in the indictment and be innocent of committing the lesser included offense of aggravated assault. Therefore, Count 4 of the indictment was sufficient to withstand a general demurrer. See *Wilson*, supra, 318

8

Ga. App. at 95 (1) (c) (i) (holding that the indictment charging the defendant with aggravated assault on a peace officer was sufficient to withstand a general demurrer where the defendant could not admit to the allegations in the indictment and be innocent of committing the lesser included offense of aggravated assault).[7] Accordingly, Bell's claim that indictment was insufficient fails.

3. Lastly, Bell argues that the trial court committed plain error in instructing the jury that it was authorized to convict him of malice murder or felony murder. We disagree and conclude that the trial court did not err in its instructions to the jury.

Bell concedes that his trial counsel did not object to the alleged improper instructions during trial.

> Because trial counsel did not object to the jury instructions at trial, appellate review of the contentions is precluded unless the contested portion of the jury charge constitutes plain error which affects substantial rights of the parties. We review for plain error an alleged jury-instruction error if the error is properly enumerated and argued on appeal.

---

[7] Bell's reliance on *Chandler v. State*, 204 Ga. App. 816 (421 SE2d 288) (1992), is misplaced because the issue there concerned the trial court's failure to instruct the jury that the State had to prove that the defendant knew that the victim was a police officer. Id. at 820 (3). Here, however, the trial court correctly charged the jury that it had to find that Bell knew that the victim was a public safety officer.

(Citation omitted.) *Gay*, supra, 351 Ga. App. at 819 (3). To establish plain error,

> first, there must be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings. Reversal of a conviction is authorized if all four prongs are met. On plain error review, the presence of actual legal error is not enough, as the jury instruction in question must have an obvious defect rather than a merely arguable defect.

(Citations and punctuation omitted.) Id. at 820 (3).

Here, the trial court charged the jury with the following instructions: "After consideration of all the evidence before you, you may be authorized to return a verdict of guilty of malice murder or felony murder. But before you do that you must determine whether mitigating circumstances, if any, would cause the offense to be reduced to voluntary manslaughter." Bell argues that the trial court erred in charging the jury in this manner because the instructions ignored or diminished the

10

presumption of innocence, it relieved the State of its burden of proving his guilt beyond a reasonable doubt, and it amounted to a comment on Bell's guilt.

We conclude that Bell has failed to demonstrate that the trial court erred in charging the jury. Contrary to Bell's claims, the instructions did not diminish the presumption of innocence or relieve the State of its burden of proof, and did not operate as a comment on Bell's innocence. Instead, the trial court merely instructed the jury that before it could return a guilty verdict for malice murder or felony murder, it first had to consider whether mitigating circumstances warranted a guilty verdict for the lesser offense of voluntary manslaughter. The trial court's instruction closely mirrors the pattern jury instruction, which states: "After consideration of all the evidence, before you would be authorized to return a verdict of guilty of (malice murder) (felony murder), you must first determine whether mitigating circumstances, if any, would cause the offense to be reduced to voluntary manslaughter." Suggested Pattern Jury Instructions § 2.10.40. The jury was also instructed that Bell was to be presumed innocent until proven guilty and that the State bore the burden of proof for each offense. Additionally, the trial court instructed the jury that "no ruling or comment that the court . . . made during the progress of th[e] [trial] [was] intended to express any opinion upon the facts of this case, upon the credibility of the

11

witnesses, upon the evidence or upon the guilt or innocence of the defendant."

Viewed in this context, the trial court's statement that the jury "may be authorized" to find Bell guilty of malice murder, felony murder, or voluntary manslaughter was not a command or a statement that there was sufficient evidence to return a guilty verdict but was merely a statement reflecting the jury's discretion in returning its verdicts. No reasonable jury would have understood the court's instructions, taken as a whole, as intimating that the jury should reach a particular verdict or that the prosecution was relieved of its burden of proof, and Bell has therefore failed to show error in the trial court's instructions to the jury.[8] See *Picklesimer v. State*, 353 Ga. App. 718, 726 (5) (839 SE2d 214) (2020) ("When a jury charge is a correct statement of law, a defendant cannot satisfy the first two prongs of the plain error test — that a clear or obvious legal error occurred. Thus, we find no error, much less any plain error.") (citation and punctuation omitted). Therefore, Bell's claim that the trial court committed plain error in instructing the jury necessarily fails.

---

[8] Bell's reliance on *Sales v. State*, 296 Ga. 538 (769 SE2d 374) (2015), is misguided. In that case, the trial judge expressly remarked to the jury that the offenses had occurred in a particular county, which therefore relieved the State of its burden of proving venue. Id. at 540-541 (2).

Accordingly, for the reasons stated above, we affirm the trial court's order denying Bell's motion for new trial.

*Judgment affirmed. Mercier, J., and Senior Appellate Judge Herbert E. Phipps, concur.*