**SECOND DIVISION**
**MILLER, P. J.,**
**BROWN and GOSS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 25, 2019**

# In the Court of Appeals of Georgia

A18A1829. STRICKLAND v. THE STATE.

BROWN, Judge.

Antonio Strickland was charged by uniform traffic citation with following too closely in violation of OCGA § 40-6-49. At the close of evidence during his bench trial, Strickland made an oral motion to quash the charge, which the trial court denied. Strickland now appeals his conviction of following too closely, contending that the trial court erred in denying his motion to quash the charge because the citation fails to allege the essential elements of the offense. For the reasons explained below, we agree and reverse.

1. *General or special demurrer.* At the outset, we address whether Strickland's motion was in the nature of an untimely special demurrer, as argued by the State.[1]

> A special demurrer is waived if not raised before pleading to the merits of the indictment. On the other hand, because a general demurrer attacks the legality of an indictment, it is permissible to raise this ground after verdict by a motion in arrest of judgment even if there was no earlier objection. A motion in arrest asserts that the indictment contains a defect on its face affecting the substance and real merits of the offense charged and voiding the indictment, such as failure to charge a necessary element of a crime. Likewise, an oral objection or motion to quash based upon the same grounds as a general demurrer can be asserted anytime during the trial.

(Citations and punctuation omitted.) *McKay v. State*, 234 Ga. App. 556, 559 (2) (507 SE2d 484) (1998). As previously stated, Strickland orally moved to quash the citation at the close of evidence during his trial. Thus, if Strickland's motion to quash was in the nature of a special demurrer, it was untimely. See OCGA § 17-7-110 ("All pretrial

---

[1] In its initial four-page brief on appeal, the State argued that Strickland was challenging the validity of OCGA § 40-6-49 in addition to claiming the citation was defective for failing to charge every element of the offense. Thus, according to the State, Strickland's argument is "a combined special demurrer and a general demurrer." We disagree that Strickland is asserting that OCGA § 40-6-49 is unconstitutional. Furthermore, and contrary to the State's assertion, challenging the constitutionality of a statute on which an indictment is based is in the nature of a general demurrer. See, e.g., *State v. Moore*, 259 Ga. 139 (376 SE2d 877) (1989).

motions, including demurrers and special pleas, shall be filed within ten days after the date of arraignment, unless the time for filing is extended by the court."). And the failure to file a timely special demurrer seeking additional information constitutes a waiver of the right to be tried on a perfect indictment. See *Carter v. State*, 155 Ga. App. 49, 50 (1) (270 SE2d 233) (1980).

Here, Strickland argues that the citation is deficient because it fails to set out all of the essential elements of the crime, and that he could admit all of the allegations in the citation and not be guilty of a crime. And as the State explains in its brief, a challenge to the sufficiency of an indictment because it fails to set forth all of the essential elements of the charged crime is properly considered a general demurrer. See *Coleman v. State*, 318 Ga. App. 478, 479 (1) (735 SE2d 788) (2012) ("A general demurrer . . . challenges the sufficiency of the substance of the indictment, such as an allegation that an indictment contains a defect on its face affecting the substance and merits of the offense charged, like a failure to charge a necessary element of a crime.") (footnote omitted); *Newsome v. State*, 296 Ga. App. 490, 492-493 (1) (675 SE2d 229) (2009) (trial court erred in denying defendant's general demurrer to count in accusation, charging defendant with "unlawfully violat[ing] the provisions of a family violence order, in violation of OCGA § 16-5-95," because the accusation

3

failed to set out the essential elements of the crime charged or to apprise defendant of the charges against him); *McKay*, 234 Ga. App. at 559 (2) (a failure to charge a necessary element of a crime is subject to a general demurrer, motion to quash, or motion in arrest of judgment). Accordingly, Strickland has not waived his right to challenge the sufficiency of the citation by not filing a timely special demurrer.

2. *Sufficiency of the citation.* Having determined that Strickland's motion was in the nature of a general demurrer, we now turn to whether the trial court erred in denying his motion to quash the citation. As we have previously explained,

> [t]he true test of the sufficiency of an indictment or accusation or citation is not whether it could have been made more definite and certain (or, for that matter, perfect,) but whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

(Citations and punctuation omitted.) *Thomason v. State*, 196 Ga. App. 447, 448 (2) (396 SE2d 79) (1990). "This presents a question of law that we review de novo." (Citation omitted.) *State v. Wright*, 333 Ga. App. 124, 125 (775 SE2d 567) (2015).

4

In *Jackson v. State*, 301 Ga. 137 (800 SE2d 356) (2017), the Supreme Court of Georgia emphasized that withstanding a general demurrer or motion to quash "requires more than simply alleging the accused violated a certain statute." Id. at 140 (1). Thus, a legally sufficient indictment must either "(1) recite the language of the statute that sets out all the elements of the offense charged, or (2) allege the facts necessary to establish violation of a criminal statute." Id. at 141 (1). "[I]f the accused can admit all the indictment or accusation or citation charges and still be innocent of having committed any offense, the indictment or accusation or citation is defective." (Citation and punctuation omitted.) *Thomason*, 196 Ga. App. at 448 (2). Finally, "[a]n indictment is to be strictly construed against the [S]tate when a demurrer has been filed against it." *Wright*, 333 Ga. App. at 126, citing Jack Goger, Daniel's Ga. Criminal Trial Practice, § 13-4 (2014-2015 ed.).

The uniform traffic citation is composed of five sections: Violator, Violation, Location, Summons, and Officer Certification. Within the Violation section, there are three subsections. Subsection one seems to apply when the cited violation is speeding, and includes blanks for the speed at which the car was traveling, the applicable speed limit, whether the speed was clocked by a patrol vehicle, and how the speed was detected. Subsection two clearly applies to citations for driving under

5

the influence, asking the officer to check which type of test was administered, who administered the test, and what the test results were. The last subsection is titled "OFFENSE (other than above)" and asks the officer to specify the name of the offense and the violated code section. Additionally, a portion of this subsection is titled "REMARKS" and offers two blank lines where an officer can include additional information. Below the REMARKS section, a table sets forth a number of options to check under the headings Weather, Road, Traffic, Lighting, and Commercial Vehicle Information. Thus, the officer is able to specify the conditions at the time of the citation.

Here, both the speeding and DUI subsections of the citation are left blank. In the third subsection, the "OFFENSE" is specified as "Following to[o] closely" and the Code Section specified is "[OCGA §] 40-6-49." The "REMARKS" section is blank. Checkmarks in the table indicate "clear weather," "dry, "concrete" road, "medium traffic," and "daylight." Within the Violator section, it is indicated by checkmark that an accident occurred.

The cited code section, OCGA § 40-6-49, provides:

(a) The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicles and the traffic upon and the condition of the highway.

6

(b) The driver of any motor vehicle which is drawing another vehicle when traveling upon a roadway outside of a business or residential district and which is following another motor truck or motor vehicle drawing another vehicle shall, whenever conditions permit, leave sufficient space so that an overtaking vehicle may enter and occupy such space without danger, except that this shall not prevent a motor truck or motor vehicle drawing another vehicle from overtaking and passing any like vehicle or other vehicle.

(c) Motor vehicles being driven upon any roadway outside of a business or residential district in a caravan or motorcade whether or not towing other vehicles shall be so operated as to allow sufficient space between each such vehicle or combination of vehicles so as to enable any other vehicle to enter and occupy such space without danger. This subsection shall not apply to funeral processions, parades, or other groups of vehicles if such groups of vehicles are under the supervision and control of a law enforcement agency.

(d) Vehicles which approach from the rear any other vehicle or vehicles stopped or slowed to make a lawful turn shall be deemed to be following for purposes of this Code section.

(e) This Code section shall not apply to the operator of any non-leading vehicle traveling in a coordinated platoon. For purposes of this subsection, the term "coordinated platoon" means a group of motor vehicles traveling in the same lane utilizing vehicle-to-vehicle communication technology to automatically coordinate the movement of such vehicles.

As stated above, in order to survive a general demurrer, or motion to quash, the

citation must either (1) recite the language of OCGA § 40-6-49 that sets out all the

elements of the offense charged, or (2) allege the facts necessary to establish a violation of OCGA § 40-6-49. *Jackson*, 301 Ga. at 141 (1).

(a) *Whether the citation sets out the elements of the offense charged.* We find it clear that the citation fails to recite the language of OCGA § 40-6-49 setting out all the elements of the offense. In fact, the citation does not recite *any* language found in OCGA § 40-6-49 apart from the title of the code section — "following too closely." And the fact that the citation includes this verbiage does not remedy the issue. Cf. *State v. Ware*, 282 Ga. 676, 678 (653 SE2d 21) (2007) ("it is fundamental that the preamble or caption of an act is no part thereof and cannot control the plain meaning of the body of the act") (citation omitted).

Citing *Power v. State*, 231 Ga. App. 335 (499 SE2d 356) (1998), the State argues that the phrase "'following too closely' is universally understood and has a universal meaning that is incorporated into . . . OCGA § 40-6-49 (a)." In *Power*, a uniform traffic citation charged the defendant with "DUI in violation of Code Section 40-6-391." (Punctuation omitted.) 231 Ga. App. at 336 (1). This Court held that the citation was adequate for prosecution of DUI less safe under OCGA § 40-6-391 (a) (1), but inadequate to prosecute for OCGA § 40-6-391 (a) (4) (DUI per se). Id. at 337 (1). We based our holding on the Georgia Supreme Court's reasoning in *Cargile v.*

8

*State*, 244 Ga. 871, 873 (262 SE2d 87) (1979): that "the phrase 'driving under the influence of alcohol' has a universally recognized and understood meaning so that reasonable persons could not differ as to its interpretation." (Punctuation omitted.) *Power*, 231 Ga. App. at 336-337 (1). Based on this, we concluded that a citation "charging a defendant with driving under the influence of alcohol or drugs . . . is an indictment that charges the defendant with violating OCGA § 40-6-391 (a) in one of the three ways specified by subsections (a) (1), (2), and (3)." Id. at 337 (1).

In *Cargile*, supra, the Supreme Court held that "the phrase 'driving under the influence of alcohol' is universally recognized and understood, and it is not deficient because indefinite or unintelligible." 244 Ga. at 873 (1). However, the Court's holding was *only* in the context of the defendant's constitutional challenge to the former DUI statute, and thus *Cargile* stands for the sole proposition that the phrase "driving under the influence of alcohol" is not unconstitutionally vague — an entirely separate issue from whether a citation is sufficient to survive a general demurrer.[2]

_____

[2] We note that *Power* relied on *Cargile* and *Hogan v. State*, 178 Ga. App. 534 (343 SE2d 770) (1986), which in turn also relied on *Cargile*, to conclude that the phrase "driving under the influence" and the phrase "to the extent it is less safe for the person to drive" are not two separate elements but rather are equivalent concepts describing the same physical condition. However, *Cargile* explicitly stated that driving under the influence of alcohol is not unconstitutionally vague "because subsequent subsections set forth the *additional criteria*, 'to a degree which renders

9

Furthermore, this reasoning could be extended to nearly every offense such that merely citing the code section and its title would be sufficient to survive a demurrer. And our Supreme Court specifically rejected this reasoning in *Jackson*, supra. We also point out the distinction between the phrases "driving under the influence" and "following too closely." It is impossible for one to admit to the former and be innocent of a crime. The same cannot be said of the latter. We thus find the State's argument on this basis unpersuasive.

(b) *Whether the citation alleges the facts necessary to establish a violation of the statute.* Likewise, the citation fails to allege any facts necessary to establish a violation of OCGA § 40-6-49. While it indicates an accident occurred, the citation does not provide any details. It is unclear from the citation how the accident occurred, how many vehicles were involved, at what speeds the vehicles were traveling, and the approximate distance between the vehicles. The citation does allege that the weather was "clear," the road was "dry," and the traffic was "medium," but this alone is insufficient to establish that Strickland violated OCGA § 40-6-49.

The State argues that this Court's holdings in *Shelton v. State*, 216 Ga. App. 634 (455 SE2d 304) (1995), and *Slinkard v. State*, 259 Ga. App. 755 (577 SE2d 825)

him incapable of safely driving.'" 244 Ga. at 873 (1).

10

(2003), mandate a different result. We are unpersuaded. First, both cases were decided before *Jackson*, supra. In *Shelton*, we affirmed the trial court's denial of the defendant's motion to quash the citation over the defendant's argument that the citation was vague because the cited statute provides for violation in a multitude of ways. 216 Ga. App. at 634-635 (1). We found that the citation contained sufficient factual allegations to inform the defendant that he was charged with violating OCGA § 40-6-391 (DUI statute); specifically, that a breath test was administered and that the results of the breath test indicated an alcohol level of .17 grams. Id. at 635 (1). Thus, the citation in *Shelton* specifically laid out *how* the defendant violated the statute and what he should be prepared to defend at trial.

In contrast to the citation in *Shelton*, here, the instant citation provides no facts which would establish a violation of OCGA § 40-6-49. Merely stating that Strickland committed the offense of "Following to[o] closely In Violation of Code Section 40-6-49" states a legal conclusion, not an allegation of fact. See *Jackson*, 301 Ga. at 141 (1); see also *Newsome*, 296 Ga. App. at 491-492 (1). Further, immediately following the blanks for designation of the offense, there is a specific blank titled "REMARKS" where an officer could set forth the facts describing the offense, but nothing is written.

11

In *Slinkard*, supra, the defendant argued, as Strickland does in the instant case, that his uniform traffic citation was deficient because it did not contain the essential elements of the crime charged, namely driving under the influence. 259 Ga. App. at 757 (1) (c). This Court held that the claim was not preserved for review because the defendant had not argued this by way of general demurrer or a motion in arrest of judgment. Id. at 757 (1) (c) (i). As dicta, we went on to say that the citation sufficiently laid out the essential elements of the crime, relying on the proposition that "reciting the proper statute is a sufficient, though not desirable, method of fulfilling the requirement. . . ." (Citation, footnote, and punctuation omitted.) Id. at 757 (1) (c) (ii). And *Jackson* explicitly overruled this Court's opinions in *Slinkard* and *Shelton* to the extent they relied on this proposition. *Jackson*, 301 Ga. at 140 (1) (overruling opinions "to the extent they hold that an indictment alleging merely that the accused's acts were in violation of a specified criminal Code section is not defective").

The State points to a different portion of *Slinkard* that addresses the defendant's contention that because his citation referenced all the subsections of OCGA § 40-6-391 (a), it alleged more than one offense. *Slinkard*, 259 Ga. App. at 755 (1) (a). However, this Court held that the defendant's claim should have been brought as a special demurrer in writing before pleading to the merits of the case, and

12

thus the claim was not preserved for review on appeal. Id. at 755-756 (1) (a). Accordingly, the portion of our opinion on which the State relies is merely dicta and applies to a *special* demurrer.

The State also urges us to reach a different conclusion based on the distinction between citations and other charging documents, such as indictments and accusations. As far as this Court can tell, we have never treated a uniform traffic citation, which is indisputably a charging instrument, differently from an indictment or accusation in the context of a demurrer. See, e.g., *Shelton*, 216 Ga. App. at 634-635 (1); *Thomason*, 196 Ga. App. at 448 (2). The State asks us to draw such a distinction based on the practical differences between a citation and a formal accusation. While we acknowledge these practical distinctions, it is not this Court's place to draw such a line in order to treat citations differently from any other charging instrument and to ensure that citations do not fall within the scope of *Jackson*, supra.

Our opinion in this case neither requires prosecutors to draft and file accusations for every citation nor asks police officers to "stand in the place of prosecutors and draft charging language appropriate to the law and facts of the case on their citations." We are merely reiterating, under a specific set of circumstances, that a citation — if used as a charging instrument — should provide at least a bare

13

minimum of facts alleging *how* the defendant violated the code section or at least track the language of the code section — not just the title of the code section — to set out all of the elements of the offense.

In conclusion, we find that the citation at issue is substantively defective because it simply alleges that Strickland violated a certain statute, which is insufficient to survive a motion to quash. See *Jackson*, 301 Ga. 140 (1). Accordingly, the trial court erred in denying Strickland's motion to quash the citation, and Strickland's conviction is reversed. See *Spence v. State*, 263 Ga. App. 25, 28 (2) (587 SE2d 183) (2003); *Ross v. State*, 235 Ga. App. 7 (508 SE2d 424) (1998).

*Judgment reversed. Miller, P. J., and Goss, J., concur.*