**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.gov/rules**

**June 25, 2026**

# In the Court of Appeals of Georgia

A26A0641. THE STATE v. MORRIS.

DILLARD, Presiding Judge.

The State appeals the trial court's grant of Don Morris's motion for a general demurrer, which resulted in the dismissal of a charge against him for driving under the influence ("DUI") less safe. More precisely, the State argues the trial court erred in finding that (1) the uniform traffic citation ("UTC") issued to Morris and filed in this case was insufficient to charge him with DUI less safe; and (2) the accusation amending the previously filed UTC was untimely. For the following reasons, we affirm.[1]

---

[1] Oral argument was held on February 3, 2026, and is archived on the Court of Appeals of the State of Georgia's website. See Court of Appeals of the State of Georgia, Oral Argument, Case No. A26A0641. (Feb. 3, 2026), available at https://vimeo.com/1161863131.

On November 20, 2021, Morris received a UTC for "driving under the influence" in violation OGCA § 40-6-391(a)(1)-(5); but despite the various substances referenced in those subsections, the UTC did not say which substance impaired Morris or which subsection he violated.[2] The UTC was stamped filed the next day in the Municipal Court of Atlanta.[3] On March 30, 2023, Morris pleaded not guilty and requested a jury trial in a "higher court."

On November 30, 2023, Morris was charged, via accusation, in the State Court of Fulton County with one count of DUI less safe. The accusation contained more details than the UTC, alleging that Morris committed the offense of DUI less safe (a misdemeanor) in that on November 20, 2021, he "did drive and have actual physical control of a moving vehicle while under the influence *of alcohol* to the extent that it was *less safe* [for him] to drive," in violation of OCGA § 40-6-391*(a)(1)*.[4]

---

[2] Morris was also issued a UTC for following too closely, but that offense is not at issue on appeal.

[3] The stamp is difficult to discern, but it appears undisputed that the DUI citation was filed in the municipal court on November 21, 2021. Even so, the specific day on which the UTC was filed in that court is not relevant to our resolution of this appeal.

[4] (Emphasis added).

Then, on February 27, 2025, Morris filed a general demurrer, requesting that the trial court dismiss the accusation because the UTC filed in the municipal court was not a sufficient charging document and the later accusation was filed outside the applicable statute of limitations. After a hearing, the court granted Morris's general demurrer and dismissed the case. This appeal by the State follows.

1. The State first argues that the trial court erred in finding the UTC charging Morris with driving under the influence under an unspecified substance in violation of OCGA § 40-6-391(a)(1)-(5) was insufficient to withstand a general demurrer. We disagree.

We review the trial court's ruling on a general demurrer *de novo*.[5] Importantly, a charging instrument may be challenged by general or special demurrer.[6] A general demurrer "challenges the sufficiency of the substance of the indictment or accusation, whereas a special demurrer challenges the sufficiency of the form of the indictment

---

[5] See *Stapleton v. State*, 362 Ga. App. 740, 742(1) (869 SE2d 83) (2021); *Malphurs v. State*, 336 Ga. App. 867, 868 (785 SE2d 414) (2016).

[6] See *Kimbrough v. State*, 300 Ga. 878, 880 (799 SE2d 229) (2017); *State v. Meadows*, 372 Ga. App. 748, 750 (906 SE2d 449) (2024).

or accusation."[7] Significantly, a charging instrument is "to be strictly construed against the State when a general demurrer has been filed against it."[8] And as we have explained, the true test of charging instrument withstanding a general demurrer is found in the answer to the question: "Can the defendant admit the charge as made and still be innocent? If he can, the accusation is fatally defective."[9]

In this respect, the Supreme Court of Georgia has explained that

---

[7] *Meadows*, 372 Ga. App. at 750 (punctuation omitted); see also *Green v. State*, 292 Ga. 451, 452, 738 S.E.2d 582 (2013). At oral argument, there was discussion of whether the motion in this case was, in substance, a special demurrer. We held in *Strickland v. State*, 349 Ga. App. 673 (824 SE2d 555) (2019) that a challenge to the sufficiency of an indictment because *it fails to set forth all of the essential elements of the charged crime* is properly considered a general demurrer. See *Strickland*, 349 Ga. App. at 674(1). In this case, as explained below, Morris contends the UTC was deficient because it failed to set out the essential elements of DUI less safe, and so he could admit to all of the allegations in the UTC and still not have admitted committing the crime. As a result, any argument that Morris should have sought a special (rather than a general) demurrer is a nonstarter.

[8] *Meadows*, 372 Ga. App. at 750 (punctuation omitted). Accord *Stapleton,* 362 Ga. App. at 741(1).

[9] *Meadows*, 372 Ga. App. at 750 (punctuation omitted). See *State v. Wilson*, 318 Ga. App. 88, 92(1) (732 SE2d 330) (2012) ("[T]he true test of the sufficiency of [a charging document] to withstand a general demurrer is found in the answer to the question: Can the defendant admit the charge as made and still be innocent [of any crime]? If he can, the indictment is fatally defective." (punctuation omitted)).

to withstand a general demurrer, [a charging document] must: (1) *recite the language* of the statute that sets out *all* the elements of the offense charged, or (2) allege the *facts necessary to establish* violation of a criminal statute. If either of these requisites is met, then the accused[] cannot admit the allegations of the indictment and yet be not guilty of the crime charged.[10]

Indeed, Georgia law requires that a criminal charging document "which does not recite language from the Code must allege *every essential element* of the crime charged."[11]

The UTC here references OCGA § 40-6-391(a)(1)-(5) generally, but it does not recite the language of any subsection. More precisely, that statute provides that:

(a) A person shall not drive or be in actual physical control of any moving vehicle while:

(1) Under the influence of alcohol to the extent that it is less safe for the person to drive;

---

[10] *Jackson v. State*, 301 Ga. 137, 141(1) (800 SE2d 356) (2017) (emphasis added). Accord *Holtzclaw v. State*, 367 Ga. App. 687, 689 (888 SE2d 214) (2023).

[11] *Heath v. State*, 349 Ga. App. 84, 86(2) (825 SE2d 474) (2019) (emphasis added). See *State v. Daniels*, 281 Ga. App. 224, 225(1) (635 SE2d 835) (2006) ("[A] criminal indictment which does not recite language from the Code must allege every essential element of the crime charged.").

(2) Under the influence of any drug to the extent that it is less safe for the person to drive;

(3) Under the intentional influence of any glue, aerosol, or other toxic vapor to the extent that it is less safe for the person to drive;

(4) Under the combined influence of any two or more of the substances specified in paragraphs (1) through (3) of this subsection to the extent that it is less safe for the person to drive; [and]

(5) The person's alcohol concentration is 0.08 grams or more at any time within three hours after such driving or being in actual physical control from alcohol consumed before such driving or being in actual physical control ended.

In this case, the UTC filed in municipal court in November 2021—which the State alleges is a sufficient charging document for DUI less safe—described Morris's "offense" generally as "driving under the influence" in violation of OCGA § 40-6-391(a)(1)-(5). And although the UTC has a space to provide more information, it was

left blank.[12] Particularly relevant here, in *Heath v. State*,[13] the indictment charged the defendant as follows:

> in the County of Columbia and State of Georgia, on the 17th day of June, 2011, did without malice aforethought, cause the death of [the victim], a human being, through a violation of Official Code of Georgia Annotated Section 40-6-391, Driving Under the Influence of Alcohol, contrary to the laws of said State, the good order, peace and dignity thereof.[14]

In holding the indictment failed to include the essential elements of the underlying DUI charge,[15] the *Heath* Court explained,

> [t]he indictment neither recited the language of the statute that sets out all the elements of the driving-under-the-influence offense—that [the defendant] was under the influence of alcohol to the extent that it was

---

[12] See *Strickland*, 349 Ga. App. at 679(2)(b)(holding that a citation was insufficient to charge the offense of following too closely when, among other things, the portion of the citation designated for the arresting officer to make "remarks" was blank).

[13] 349 Ga. App. 89 (825 SE2d 474) (2019).

[14] Id. at 89(2).

[15] In *Heath*, the relevant charge was that the defendant committed vehicular homicide while driving under the influence of alcohol, and we held the charge was insufficient because it did not state all the essential elements of the underlying charge of driving under the influence of alcohol. See *Heath*, 349 Ga. App. at 89–90(2).

7

less safe for her to drive or that her alcohol concentration was 0.08 or more—nor alleged the facts necessary to establish violation of the driving-under-the-influence statute.[16]

Simply put, because the indictment did not specify the manner in which OCGA § 40-6-391(a) was violated, the defendant in *Heath* "could admit the allegations of the indictment and yet not be guilty of driving under the influence."[17]

Similarly, the UTC issued to Morris on November 20, 2021—and filed in the municipal court the next day—merely refers to all five subsections of OCGA § 40-6-391(a) and lists the alleged crime generally as "driving under the influence." So, as in *Heath*, the alleged charging document did not specify whether Morris was driving under the influence of alcohol when he was *less safe* to drive or whether he was doing so with an alcohol concentration that was *0.08 or more*. And unlike in *Heath*, the UTC here did not even specify the substance allegedly impairing Morris on the night in

---

[16] *Heath*, 349 Ga. App. at 89(2).

[17] Id.

question.[18] As a result, the State's argument that Morris's vague traffic citation was sufficient to constitute a valid charging document is squarely foreclosed by *Heath*.

In sum, the UTC omitted two essential elements required to charge driving under the influence of alcohol less safe under OCGA § 40-6-391(a)(1): that (1) Morris was under the influence of *alcohol*; and (2) as a result, Morris was *less safe* to drive. Under these circumstances, the trial court did not err in finding the UTC was an insufficient and a void charging document.[19]

2. In a brief two-paragraph argument, the State next contends that "[b]ecause the initial citation charging [Morris] with DUI was sufficient against a general

---

[18] As listed above, being under the influence of alcohol can occur *either* when you are driving under the influence of alcohol less safe *or* by having a certain blood-alcohol concentration. See OCGA § 40-6-391(a)(1) and (5). The statute also criminalizes driving under the influence of the following substances if you are less safe to drive: "any drug," glue, aerosol, any other toxic vapor, or a combination of the foregoing, including alcohol. Id. at (a)(1)-(5).

[19] See *Jackson*, 301 Ga. at 140(1) (holding that an indictment accusing the defendant of violating a statute, without more, is insufficient to charge every essential element of the crime and such a charging document is void); *Davis v. State*, 301 Ga. App. 484, 486(1) (687 SE2d 854) (2009) ("In a less safe case, the [S]tate must prove that the defendant had impaired driving ability as a *result of drinking alcohol* [i.e., an essential element of that offense]."(quotation marks omitted)).

demurrer, the trial court erred in finding that the subsequent accusation could not amend it." Again, we disagree.

As to the premise of the State's claim, we have already held that the UTC—*i.e.*, the State's purported charging document—is void and cannot withstand a general demurrer. This matters because while the insufficient UTC was filed in the municipal court before the applicable statute of limitations expired, the accusation later filed in the State Court of Fulton County was not. Indeed, OCGA § 17-3-1(e) provides that "[p]rosecution for misdemeanors shall be commenced within two years after the commission of the crime."[20] Here, the UTC was filed in the municipal court on November 21, 2021—only one day after Morris allegedly committed the DUI offense—but the accusation was filed in the State Court of Fulton County on November 30, 2023—more than a week after the two-year statute of limitations expired. So, even if the accusation filed in 2023 sufficiently charged Morris with all the elements of DUI less safe due to impairment by alcohol, it was filed outside the

---

[20] The accusation charged Morris with committing a misdemeanor offense.

statute of limitations.[21] The State did not file a timely DUI less safe charge against

Morris, then, and the trial court did not err in granting his general demurrer.[22]

---

[21] Recently, in *Spackman v. State*, 376 Ga. App. 176 (918 SE2d 373) (2025), we held that the statute of limitations begins to run on a UTC when it is filed with the clerk of the trial court, not when the citation is issued. See id. at 182–83(2). Some judges of this Court still question the soundness of *Spackman*'s holding (see id. at 185-90 (Dillard, P.J., dissenting)); but here, it matters not when the statute of limitations began to run because, either way, the State failed to timely file a valid charging document.

[22] In examining the relevant caselaw, we identified a slew of decisions that are in tension or arguably in tension with the Supreme Court of Georgia's binding opinion in *Jackson*, 301 Ga. at 141(1): *Rigdon v. State*, 270 Ga. App. 217, 219(1)(a) (605 SE2d 903) (2004); *Taylor v. State*, 265 Ga. App. 637, 638 (595 SE2d 344) (2004); *Fluellen v. State*, 264 Ga. App. 19, 20(1) (589 SE2d 2003); *Slinkard v. State*, 259 Ga. App. 755, 755–58 (577 SE2d 825) (2003); *Power v. State*, 231 Ga. App. 335, 336–37(1) (499 SE2d 356) (1998); *Shelton v. State*, 216 Ga. App. 634, 635 (1) (455 SE2d 304) (1995); and *Hogan v. State*, 178 Ga. App. 534, 536 (343 SE2d 770) (1986). Notably, two of these decisions—*Slinkard* and *Shelton*—were previously identified by this Court in *Strickland v. State*, 349 Ga. App. 673, 678–679(2)(a) (824 SE2d 555) (2019), as having been implicitly overruled by our Supreme Court in *Jackson*. Id. Suffice it to say, to the extent *any* of this Court's previous opinions—including those listed in this footnote—are arguably in tension or conflict with *Jackson's* core holding, they are a jurisprudential dead letter and of no precedential utility. See Ga. Const., Art. VI, § VI, ¶ VI (1983) ("The decisions of the Supreme Court [of Georgia] shall bind all other courts as precedents."); *Whorton v. State*, 321 Ga. App. 335, 339 (1) (741 SE2d 653) (2013) (holding that "vertical stare decisis dictates that we faithfully adhere to the precedents established by the Supreme Court of Georgia"); *State v. Jackson*, 287 Ga. 646, 658(5) (697 SE2d 757) (2010) ("Stare decisis is an important principle that promotes the rule of law … ."). See also Kurt T. Lash, *Originalism, Popular Sovereignty, and Reverse Stare Decisis*, 93 Va. L. Rev. 1437, 1454 (2007) (noting that "[v]ertical stare decisis refers to the binding effect of precedent on lower courts," and

For these reasons, we affirm the trial court's grant of Morris's general demurrer.

*Judgment affirmed. Gobeil and Pipkin, JJ., concur.*

---

that "[s]erious rule of law costs would follow if lower courts were free to ignore precedent established by a higher court of appeal").